UNITED STATES of America,

v.

Nigel POTTER; Daniel Bucci; and Burrillville Racing Association a/k/a Lincoln Park a/k/a Lincoln Greyhound Park, a/k/a Lincoln Park, Inc.

No. C.R.03–081 ML.

United States District Court, D. Rhode Island.

Jan. 31, 2005.

James H. Leavey, Craig Moore, Peter F. Neronha, United States Attorney's Office, Providence, RI, for Plaintiff.

C. Leonard O'Brien, Jr., Esq., B. Jean Rosiello, MacFadyen, Gescheidt & O'Brien, Anthony M. Traini, Esq., Patricia K. Rocha, Joseph Avanzato, John A. Tarantino, Adler Pollock & Sheehan, Providence, RI, for Defendants.

Donald K. Stern, Esq., Bingham McCutchen LLP, Boston, MA, Charles A. Tamuleviz, Esq., Tamuleviz, Hultquist & Bianchi, LLP, Howard A. Merten, Esq., Vetter & White, Providence, RI, for Movants.

### MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the Court on the motion of the Providence Journal Company ("Providence Journal" or "Journal") for access to a memorandum filed by the defendants in support of their Motion for Change of Venue or Alternative Relief. The Journal also seeks "if necessary" to intervene in the underlying case for the limited purpose of pursuing its motion for access. At oral argument on January 28, 2005, this Court informed counsel for the Journal that the Court had also ordered sealed the Government's Memorandum in Opposition to the Defendants' Motion for Change of Venue. Counsel for the Journal orally moved to amend the instant motion to include a prayer for access to the Government's memorandum. The Court granted the Motion to Amend.

### I.   Background and Procedural History

Defendant Lincoln Park, a subsidiary of Wembley PLC ("Wembley"), is a dog track and gambling establishment located in Lincoln, Rhode Island. Defendant Nigel Potter ("Potter") was the Chief Executive Officer of Wembley. Defendant Daniel Bucci ("Bucci") was, at times, Lincoln Park's General Manager, Chief Executive Officer, and Vice President. The defendants are charged with one count of conspiracy to commit wire fraud. The defendants are each also charged with several counts of the substantive offense of wire fraud. The indictment describes the object of the conspiracy as a scheme to defraud the citizens of Rhode Island of the honest services of one or more public officials, including John Harwood ("Harwood"), former Speaker of the Rhode Island House of Representatives. The indictment alleges that in 2000 and 2001, the defendants conspired to offer payments totaling nearly $4 million to Harwood's law firm, Mckinnon & Harwood. The defendants allegedly offered the payments in return for Harwood's political assistance in obtaining additional video slot machines at Lincoln Park and in thwarting a planned casino by the Narragansett Indian tribe.

The defendants filed a joint motion for change of venue on January 10, 2005, and attached a memorandum setting forth their argument in support of the request. Defendants concomitantly filed a motion to seal the memorandum. The Government did not object to the motion to seal. This

motion asked that the memorandum be sealed because it "contains private and confidential juror information." The Court granted the motion on January 13, 2005, and sealed the memorandum.

On January 18, 2005, the Providence Journal filed a motion for access to the memorandum on the grounds of the public's First Amendment right of access.

The defendants filed an opposition to the Providence Journal's motion for access on January 26, 2005 in which they further articulated the reasoning behind their motion to seal the memorandum. Prior to jury impanelment, the Court distributed a juror questionnaire to all prospective jurors included in the jury venire. The defendants note that their memorandum includes verbatim quotations from the responses to these questionnaires. The defendants therefore argue that the memorandum must remain sealed until the end of trial, or in the alternative must be redacted to eliminate the specific juror responses, because the Providence Journal's right of access is subordinate to the jurors' right to privacy and the defendants' Sixth Amendment right to a fair trial.

The Government also opposes unsealing if the Court finds that the defendants have made a "sufficient showing of potential prejudice." (Government's Memorandum in Support of Its Supplemental Response Regarding the Unsealing of Change of Venue Memorandum at 2.)

From the outset, the Court and the parties have been concerned about the extent of pretrial publicity and its effect on the defendants' right to a fair trial as guaranteed by the Sixth Amendment. The subject matter of this criminal proceeding has already been the topic of numerous news items in both the print and electronic media. To date, approximately forty-three articles have been published by the Providence Journal regarding the charges alleged in the indictment. Many of these articles have received prominent placement in the paper; sixteen were printed on the front page of the Journal, while another sixteen could be found on the front page of the "Rhode Island" section of the paper.

Accordingly, this Court employed extraordinary efforts to select the petit jury that would hear and decide this case. The Court summoned a larger number of prospective jurors than usual in a criminal case. The Court required all prospective jurors to complete a lengthy questionnaire. The Court then conducted individual voir dire of the prospective jurors in order to insulate each prospective juror from any potential taint. Jury selection has now been completed and trial has commenced. The Court has denied the Motion for Change of Venue or Alternative Relief for the reasons set forth on the record in open court on January 31, 2005.

## II. Discussion

Defendants advance two bases for their argument in favor of keeping the memorandum under seal: (1) the confidential nature of the juror responses; and (2) the defendants' Sixth Amendment right to a fair trial.

■ Defendants' first claim may be dealt with fairly easily. While in some instances juror responses have been shielded from public airing, those cases have involved matters of an intensely personal or sensitive nature. *See, e.g., Press–Enterprise Co. v.Super. Ct.*, 464 U.S. 501, 511–12, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*) (stating that a compelling privacy interest might arise if a juror had to reveal that she or a family member had been raped); *United States v. King*, 140 F.3d 76, 83 (2d Cir.1998) (affirming a district court's order denying press access to transcripts of *in camera* voir dire

of prospective jurors due to, in part, jurors' privacy interest in revealing "racial bias"). The subject matter of the jurors' statements here regard opinions of corruption in state government and do not involve such "deeply personal matters." Therefore, the Court finds that confidentiality does not provide a legitimate basis for continued sealing of the memorandum.

Defendants' alternate basis, that is, the preservation of their Sixth Amendment right to a fair and impartial trial, presents a much more difficult question. The Journal argues that the First Amendment mandates the immediate release of the memorandum. This Court must now reconcile these two countervailing positions.

■ The Court begins its analysis with the presumption in favor of access to judicial documents such as the memoranda under seal. *Globe Newspaper Co. v. Pokaski,* 868 F.2d 497, 502 (1st Cir.1989). "[T]he presumption in favor of access can only be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re Providence Journal Co., Inc.,* 293 F.3d 1, 10–11 (1st Cir.2002) (quoting *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. 819, 78 L.Ed.2d 629).

■ The Sixth Amendment right to a fair trial has been held to "rise[ ] to the level of a compelling interest[,]" *id.* at 13 (citing *Press–Enterprise I,* 464 U.S. at 508, 104 S.Ct. 819, 78 L.Ed.2d 629), and "[w]hen that right collides head-on with the public's right of access to judicial records, the defendant's fair trial right takes precedence." *Id.* at 13 (citing *In re Globe Newspaper Co.,* 729 F.2d 47, 53 (1st Cir. 1984)). This pronouncement, however, is not the end of the inquiry. The Court must first consider whether release of the information would result in "a substantial likelihood ... that the accused's right to a

fair trial will ... be prejudiced." *Id.* at 13 (citing *Press–Enterprise Co. v. Super Ct.,* 478 U.S. 1, 14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II* )). The court is required to make "specific findings." *Id.* at 13 (citations omitted).

■ This case has already attracted a great deal of media attention. To date, approximately forty-three stories regarding this case have appeared in the Providence Journal. Furthermore, television and radio stations have broadcast news accounts about the case. In addition to news stories dealing directly with this case, the media has chronicled the travails of the former Speaker of the House, an individual whose name will figure prominently in this trial. Because of pretrial publicity in this case, the Court employed extraordinary means in jury selection: first, a larger than usual venire was summoned; second, jurors were required to complete a questionnaire; and third, the Court subjected jurors to individual voir dire to avoid taint.

This Court also considers significant the nature and source of information the Journal now seeks access to, specifically the actual verbatim answers of the jurors as they appear on the questionnaires. The information the Journal seeks here includes verbatim written statements from all jurors regardless of whether they were selected to serve or not. In some instances, the jurors, either orally at voir dire, or in response to other questions, qualified the remarks selected by defendants' counsel for inclusion in the memorandum. Further, the quotations included by counsel were purposefully selected to buttress their argument in favor of a change of venue. Many of the comments in this raw state could be considered to be sensational or inflammatory, thus lending themselves

to prominent placement in a newspaper headline.

In this case, the Court questioned jurors extensively about their exposure to media accounts about the case. Many indicated that, even after having been instructed by the Court to refrain from reading or watching news accounts about the case, they had inadvertently seen a headline in the Providence Journal. Based on past experience in another high profile case (*Young v. City of Providence, et al.,* C.A. No. 01–288 ML), the Court finds that frequently, through no fault on the part of the individual juror, jurors will be exposed to newspaper headlines and other news accounts because of the pervasiveness of media coverage.

In this case, the nature of the sealed information is of particularly significant concern. As earlier discussed, the memorandum includes the actual statements attributed to many of the jurors summoned for this case. Those statements reflect the opinions, beliefs, and impressions of individual members of the entire venire. Given the extensive and intense news coverage in this case, the fact that some jurors, even after having been instructed not to read or listen to news accounts about the case, had seen some of the Providence Journal headlines, and further taking into account this Court's past experience with jurors in high profile cases, and finally, taking into account the potentially inflammatory nature of some of the juror comments quoted in the memorandum, the Court finds that unsealing the document in its entirety at this time would result in a substantial likelihood that defendants' Sixth Amendment right to a fair trial would be jeopardized. The risk exists that the seated jurors will be exposed to the somewhat provocative statements of other jurors in a newspaper headline, causing both juror speculation as to whether some or all of the views expressed are those of sitting jurors and an inference that other jurors had prejudged defendants.

In balancing the public's right of access against the defendants' right to a fair trial, the Court must next determine the least restrictive means of ensuring that the defendants' rights are not compromised. Put another way, the Court must tailor its remedy "as narrowly as practicable." *In re Providence Journal Co., Inc.,* 293 F.3d at 14. In this regard, the Court considers the timing of any release and the redaction of portions of the subject memoranda. The Court finds that the legal arguments made by counsel in the memoranda do not rise to the level of concern that the statements attributed to the jurors do. The Court will, therefore, immediately release the defendants' memorandum with all references to actual statements from jurors redacted. The Court will immediately release the Government's memorandum in its entirety because it does not contain any direct quotations. The Court further orders that, after trial has concluded, it will vacate the order sealing the unredacted memorandum, thereby giving the Providence Journal full access to the memorandum in its entirety.

SO ORDERED.